**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ASHLEY N. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-379-AZ |
| | ) | |
| FRANK BISIGNANO,<br>Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION AND ORDER

This matter is before the Court on Plaintiff Ashley Williams' appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] Williams argues that the Administrative Law Judge ("ALJ") committed error by failing to adequately consider her self-reports of migraines and dismissing her credibility when ruling on her application for benefits. For the reasons discussed, the Court disagrees with Williams' arguments and finds no reversible error by the ALJ. Accordingly, the Court will affirm the ALJ's written decision.

## Background

Plaintiff Williams filed an application for disability insurance benefits on January 4, 2022, and an application for supplemental security income on January 19,

[1] On 9/22/25, the parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 9.

2022. A.R. 27.[2] She was 34 years old when she applied for disability. *Id.* at 38. She has a high school education and past relevant work as a fast-food worker. *Id.*

Williams applied for benefits claiming a disability onset date of July 20, 2021. *Id.* at 29. Her claims were denied in her initial application and upon reconsideration, and Williams requested a hearing before an ALJ. *Id.* at 27. On May 30, 2024, the ALJ held a hearing at which Williams was represented by an attorney and a Vocational Expert ("VE") testified. *Id.* at 49. On August 14, 2024, the ALJ issued a written decision denying benefits. *Id.* at 27-39. Plaintiff timely appealed to the Appeals Counsel, and the Appeals Counsel denied Plaintiff's Request for Review. *Id.* at 1. Plaintiff filed a complaint for District Court review. *See* DE 1. Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Williams was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. A.R. 29. At step two, the ALJ found Plaintiff had the following severe impairments: migraine headaches; obesity; asthma; spinal disorder; sleep apnea; history of unspecified learning disorder; depression; anxiety; hypertension; and seizure disorder. *Id.* at 30.

The ALJ next considered whether Plaintiff's documented severe impairments met or equaled any of the applicable listings. The ALJ determined Plaintiff did not

---

[2] Citations to the Administrative Record, filed at DE 14, are throughout as "A.R."

meet Listing 3.02, 3.03, 12.04, 12.06, 12.02, 12.05, 12.07, 12.08, and 12.15 *Id.* at 30-32. The ALJ found that Plaintiff's impairments or the combination of them did not meet or equal any applicable listing because she did not have a documented medical need that satisfied all of requirements of any of these listings. *Id.*

Having found Plaintiff was not presumptively disabled based on any applicable listing, the ALJ moved on to assess her Residual Functional Capacity (RFC). The ALJ found she had the capacity:

> To perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is unable to climb ladders, ropes, or scaffolds; the claimant is limited to no more than occasional climbing of ramps and stairs; the clamant is limited to no more than occasional crouching, crawling, kneeling, stooping, and balancing, as balancing is defined by the SCO; the claimant is unable to conduct commercial driving; the claimant must avoid exposure to environmental hazards, such as high exposed places and moving mechanical parts; the claimant must avoid more than occasional concentrated exposure to pulmonary irritants; the claimant is limited to understanding remembering and carrying out simple instructions; the claimant can have frequent interactions with supervisors, but is limited to no more than occasional interactions with coworkers; in order to limit the duration and intensity of such interactions with co-workers there should be no tandem work or team tasks; the claimant is unable to have any interaction with the general public; the claimant is unable to conduct fast paced production work or work that requires hourly quotas; the claimant can meet end of the day

> quotas; the claimant can handle occasional changes in a routine setting.

*Id.* at 32.

The ALJ then recounted the testimony and evidence from Plaintiff's medical history that supported or factored into the RFC. He first addressed imaging. Spinal imaging revealed "'mild' spondylosis and 'mild' listhesis" and "moderate lumbar sclerosis." *Id.* at 33. EEG and intercranial imaging revealed no evidence of epileptic activity. *Id.* Imaging of chest and lungs revealed no abnormality. *Id.* Respiratory testing found no abnormality. *Id.* EKG testing was normal. *Id.* Regarding treatment, the ALJ emphasized that claimant has had "no invasive surgical procedures" and has had "no extended outpatient hospitalizations." *Id.* Clinical findings were also "absent objective documentation as to significant and ongoing focal or neurological deficits." *Id.* at 34.

The ALJ further reviewed the opinions of the state agency medical consultants who opined that "claimant is capable of a reduced range of the light exertional level, with similar postural and environment limitations as found assessed herein." *Id.* at 37. The ALJ found these opinions to be somewhat persuasive and adopted similar postural and environmental limitations as the state agency medical consultants. *Id.* The ALJ added an additional limitation of no commercial driving to account for Plaintiff's seizure disorder. *Id.* The state agency consultive medical examiner also offered a medical source statement, but his opinion was found to be unpersuasive

because they were "inconsistent with and unsupported by the doctor's own examination." *Id.*

The state agency psychiatric consultants had opined that Williams was "able to understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; and as able to deal with changes in a routine work setting." *Id.* at 36. The ALJ found this only partially persuasive because the consultants "fail to completely utilize vocationally significant terminology." *Id.* at 36-37.

As to Plaintiff's testimony at the hearing regarding her limitations, the ALJ noted that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 33. Specifically, the ALJ did not accept Plaintiff's allegations that symptoms including high blood pressure, headaches, left foot pain, breathing difficulty, poor or unrestful sleep, fatigue, exertional, functional, and postural difficulties, and mental health or psychiatric difficulties would prevent her from working. *Id.*

At step four, Plaintiff had past relevant work as a fast-food worker. *Id.* at 38. The Vocational Expert (VE) testified that Williams would be unable to perform past work, but she would be able to perform unskilled light occupational jobs such as officer helper, mail clerk, and routing clerk. *Id.* Accordingly, at step five, Plaintiff was found not to be disabled and the application for benefits was denied. *Id.* at 39.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and states that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

An ALJ must articulate their analysis of the evidence in such a way to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). Thus "[a]n ALJ need not specifically address every piece of evidence." *O'Connor-Spinner*, 627 F.3d at 618. Remand is appropriate only "when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up).

On appeal, Plaintiff raises two arguments. First, she argues that the ALJ ignored any discussion of the possibility of equaling Listing 11.02, failed to obtain a medical opinion as to possible equaling of the Listing, and failed to incorporate any RFC limitations to accommodate her migraines. Second, she argues that the ALJ erred in her credibility assessment. The Court will address each argument in turn.

### A. Whether the ALJ needed to Evaluate Whether Plaintiff Met or Medically Equaled Listing 11.02, Obtain Medical Opinions, or Incorporate Migraine RFC Limitations

Plaintiff first argues that because she was found to have suffered from migraines, the ALJ was required at step three to evaluate whether she met Listing 11.02, which is the listing for epilepsy. Plaintiff further argues that the ALJ was required to obtain a medical opinion regarding her migraines.

Plaintiff claims her attorney "refer[red] the ALJ to the seizure listings" at the hearing and in his pre-hearing brief, meriting the ALJ's consideration of the listing. DE 21 at 2. However, during the hearing, the attorney's only reference to the listing was stating that "[i]t sounds like she's reporting Listing-level seizures," not migraines. A.R. 55. Furthermore, Plaintiff never raised the issue of Listing 11.02 or argued that she met the requirements of that listing in the pre-hearing memorandum. *See* A.R. 451-52. "Although the Court recognizes that a strict waiver doctrine does not apply in Social Security disability cases, it is still worth noting that plaintiff's counsel at the administrative level glossed over the very issues her current counsel is faulting the ALJ for glossing over." *Barbara B. v. Saul*, No. 18 CV 50285, 2020 WL 70922, at *4 (N.D. Ill. Jan. 7, 2020).

While Plaintiff is correct that the ALJ found her migraines constituted a "severe impairment" and that the ALJ did not discuss Listing 11.02 in the written decision, that alone was not an error. Plaintiff relies on *Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006) to argue that "an ALJ must provide sufficient analysis for the Listing that corresponds to each of a claimant's severe impairments." DE 16 at 11. That is not a correct statement of law in this circuit. Rather, Seventh Circuit precedent "does not require ALJs to name and discuss every Listing in their written decisions." *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022). If a claimant fails to offer evidence that they meet or equal a listing, the ALJ "has no duty to analyze" that listing. *Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011). In other words, *Wilder*

and other binding precedent forecloses Plaintiff's argument that the ALJ was required to specifically evaluate whether she met the listing.

Plaintiff further argues that the ALJ erred in not seeking the opinion of a medical advisor as to whether her migraines equaled a listing. Plaintiff relies on *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996) to argue that "[b]y failing to utilize the medical experts available for testimony and medical record interpretation, the ALJ is impermissibly playing doctor." *See* DE 16 at 19. However, as reiterated in *Wilder*, SSR 17-2p provides that an ALJ is not required to ask for and consider evidence from medical experts if the ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). In *Wilder,* the claimant did not argue listing-level severity at the hearing and thus the ALJ did not call a medical expert or make a finding on whether the claimant met or equaled the listing. 22 F.4th at 649-53. The ALJ's decision was affirmed because the ALJ had no reason to think Plaintiff's headaches were listing level as the issue was not raised. *Id.* at 653. Plaintiff similarly failed to raise this issue and thus the ALJ was within her discretion to not solicit the opinion of a medical advisor regarding a listing which Plaintiff did not actually argue in favor of or provide evidentiary support for.

Next, Plaintiff argues that the ALJ erred by not including work limitations based on her migraines in the RFC. And again, Plaintiff bases her argument on the fact that the ALJ found migraines to be a "severe impairment" but did not otherwise incorporate them into the RFC. *See* DE 16 at 20 ("[T]he ALJ must explain why

supportive evidence, and his own finding at step two that Ashley's headaches were a severe impairment, did not merit any accommodations in the RFC.").

In discussing the evidence that supports an RFC assessment, the Seventh Circuit merely requires that "ALJs provide an explanation for how evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (citation omitted). Here, the ALJ addressed Plaintiff's migraines and cited the relevant medical records pertaining to this impairment. *See* A.R. 33-34 ("the claimant underwent . . . intracranial imaging that returned without evidence of . . . intracranial abnormality. . . . examinations are absent objective findings as to abnormal cranial nerves (associated with . . . headache symptomology)"). And the RFC *did* account for Plaintiff's migraines. As the Commissioner explains, "the RFC includes exertional, postural, and environmental restrictions, all of which account for Plaintiff's headaches." DE 20 at 8 (citing A.R. 93-94, 119-20).

"It is not enough to criticize the ALJ's decision about her functional capacity to work." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Instead, a claimant "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Id.* "There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Here, the ALJ assessed *greater* workplace restrictions than the reviewing physicians. *See* A.R. 37.

Furthermore, although the Plaintiff cites evidence of her migraines on the record, DE 16 at 15-18, she cites no doctor's opinions indicating that greater limitations are warranted. This lack of evidence in the record supporting greater limitations forecloses Plaintiff's argument.

Nevertheless, Plaintiff argues that remand is warranted so the ALJ can make specific findings about absenteeism related to her migraines. *Id.* at 21. At the hearing, the ALJ solicited the Vocational Expert's opinion concerning Plaintiff's off-task time and absences, indicating the ALJ did consider this issue. A.R. 76-77. Plaintiff is correct, however, that discussion of absenteeism is not included in the ALJ's opinion and final RFC determination. *See* A.R. 27-39. But an ALJ need only reference *supported* limitations in an RFC assessment. *McCorkle v. Kijakazi*, No. 22-1638, 2023 WL 179983, at *3 (7th Cir. Jan. 13, 2023) (affirming ALJ's decision to not include migraine limitations regarding absenteeism and off-task time in the RFC because they lacked evidentiary support). It was Plaintiff's burden to "provide evidence that [conditions] support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). Where a Plaintiff has no treatment providers limiting work capacity due to absenteeism or any objective basis for finding she would be absent from work or off task due to headaches, an ALJ need not include absenteeism limitations in the RFC. *See Mychael W. v. Kijakazi*, No. 3:22cv675, 2023 WL 5498856, at *5 (N.D. Ind. Aug. 25, 2023). That is because it remains Plaintiff's evidentiary burden to establish her own limitations and attendant disability. *Wilder*, 22 F.4th at 653 ("a claimant bears the burden of proof").

Here, no treatment provider limited Plaintiff's work capacity due to absenteeism. In addition, Plaintiff has not provided a sufficient basis for finding she would be absent from work or off task as a result of her headaches. Plaintiff's treatment records indicate that her headaches reduced in frequency and intensity with medication management, reducing to "milder" and "every now and then." A.R. 857, 867, 937. Plaintiff cites subjective allegations in the record regarding her migraines indicating that they are still severe. DE 16 at 15-18. However, the ALJ was not required to accept Plaintiff's subjective allegations concerning her migraines without qualification. Indeed, the ALJ made a finding that discounted Plaintiff's subjective claims generally because "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." A.R. 33. In support, the ALJ indicated that Plaintiff's medical records consistently showed less severe migraine symptoms than her subjective testimony. *See* A.R. 34 (citing A.R. 742, 754, 761, 819, 823, 827, 857, 862, 867, 937). Thus, the ALJ reasonably accounted for Plaintiff's limitations in the RFC and remand is not warranted on this basis.

**B. Whether the ALJ Erred in her Credibility Assessment**

Plaintiff argues that the ALJ's rejection of her subjective symptom testimony was not grounded in substantial evidence. DE 16 at 26. "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). A Court will reverse an ALJ's determination of a claimant's subjective statements only if it is "patently wrong," an even more demanding

standard than the deferential substantial evidence standard. *See Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023).

Here, the ALJ found that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." A.R. 33. Plaintiff's argument heading in her brief criticizes the ALJ's rejection of subjective testimony pertaining to her mental impairments, but the argument itself is less precise regarding what impairments are at issue. *See* DE 16 at 21-27. Plaintiff criticizes the ALJ's finding on two broad grounds. First, she argues that the ALJ "did not provide any reasoning beyond the objective medical evidence and finding that [her] treatment has been conservative." DE 16 at 23. Contrary to Plaintiff's assertions, the written decision demonstrates that the ALJ considered several different lines of evidence which she determined undercut Plaintiff's testimony as to her limitations. For each condition at issue, the ALJ discussed objective diagnostic imaging, testing, and findings, all of which indicated their severity was less than what Plaintiff testified. A.R. 33-34. Thus, Plaintiff's attempt to characterize the ALJ's written decision as lacking reasoning, DE 16 at 23, is false. Plaintiff may feel that the ALJ could have written more, but that alone is not a basis to reverse. *See Thorlton v. King,* 127 F.4th 1078, 1083 (7th Cir. 2025) (affirming although "the ALJ [could] have done and said more"); s*ee also Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (ALJs "are subject to only the most minimal of articulation requirements"). "The ALJ is not required to address every piece of evidence or testimony presented." *Terry v. Astrue*, 580 F.3d

471, 475 (7th Cir. 2009). All that is required is substantial evidence and the ALJ cited evidence which undercut and discredited Plaintiff's testimony as to her own limitations. *See Roddy,* 705 F.3d at 636**.**

Second, she argues that the ALJ "was required to at least minimally discuss [her] need for a wide array of medications before discounting her credibility based on conservative treatment." DE 16 at 25. However, the ALJ did not discount her credibility based on conservative treatment; she explicitly acknowledges that conservative treatment is "not dispositive as to functional ability." A.R. 33. And, even if relying on conservative treatment was problematic, the ALJ cites several other reasons why she discounted Plaintiff's testimony, such as "objective clinical findings, objective diagnostic testing/imaging . . . and lack of necessitated inpatient hospitalization." *Id.* at 34. Furthermore, Plaintiff fails to support her argument with any citation to record evidence that she believes the ALJ ignored regarding medication. A claimant "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales*, 103 F.4th at 470. Thus, Plaintiff's failure to identify evidence that the ALJ ignored or that provides support for her subjective testimony stalls her argument.

**Conclusion**

For the reasons discussed, the Commissioner's decision is **AFFIRMED**, and the Clerk of Court is **DIRECTED** to enter judgment for the Defendant Commissioner of Social Security.

SO ORDERED this 17th day of September 2026.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT